I have one preliminary matter to take care of before we have the three oral arguments and that is the admission of Rachel E. Goldstein as a member of the Bar of this Court. Yes, I would like to move for the admission of Rachel Goldstein, one of my outstanding law clerks. She has done a very good job for me this past year and along with her other colleagues I couldn't do the job without them. And certainly I know that she would make a fine addition to this Court. So I move for the admission of Rachel Goldstein. If you say so, it's good enough for me. Judge Alderson? I approve. If you would step up to the podium please. Thank you. You solely swear and affirm that you will behave yourself as an attorney and counsel of this Court, uprightly and according to law, and that you will succeed in the Constitution of the United States of America. Congratulations. Welcome. I look forward to having you some day before us. Maybe not before then for a while. But it would be great to have you. The first of the three cases we have this afternoon is Thomas v. Secretary of the Pennsylvania Department of Corrections, No. 10-4430. Mr. Wyckoff and Ms. Palmer. Good afternoon, Your Honors. May it please the Court, I'm David Wyckoff from the Federal Community Defender. I'm here for Mr. Wayne, your pal in this case. And I'd like to reserve three minutes for rebuttal. So he goes by Wayne now? Yes. Okay. We've got Leroy Thomas, a.k.a. John Wayne. Yes, Mr. Wayne. I mean, I like him more than John Wayne anyway. The first question is, our certificate of appealability talked about, in connection with the investigation issue, as to whether asking a brief would affect the standard by which we look at it. Yes. And the Commonwealth, I think correctly, has called that into question. Have you looked at that? Sure. Yes, Your Honor. The CLA order specifically asks for a briefing on Leyva v. Wilkins, I believe? Yes. And, in fact, Leyva goes to the heart of this case. I think this is a rare situation where all of these cases seem to have these complex procedural issues. This is a situation where I think there's actually one page of Leyva that answers all the Court's questions in terms of the procedural atmosphere of this, the first claim and the brief. And that's page 369 of the Federal Report, that's 504 F. 3rd, 357 H. 367. Why did you read that? Because, I'm sure the Court recalls, in Leyva, Mr. Leyva, his PCRA condition was dismissed because he could not satisfy state court rule, which was a custody requirement for PCRA conditions. But wasn't that as a gatekeeper, in effect? I mean, here it seems as if what happened is that there was a decision on the first issue on the merits. In effect, the Court saying that, look, we cannot, under our state evidentiary rules, this is hearsay. We're not going to consider it because we can't consider this declaration of this woman who died because it wasn't notarized or anything like that. And she's not here. Therefore, there is no evidence to put in. And because there is no evidence, Mr. Wayne loses on the merits. I believe on the first issue. That's not the second issue. I think it's actually slightly different than that, although I think it's okay for us even if that is what they said. I think what they said is you don't get an evidentiary hearing because you can't satisfy our hearsay rules. Because you don't have any evidence to put in at the evidentiary hearing. As a matter of state law, you don't have such evidence, correct? So I think the easiest way to cut through all of that, I think, is probably to treat that as clearly as a state law ruling based on state evidentiary rules. And I think if we treat that the way, give that as much deference as this Court ever gives to state court rules, which is through the adequate and independent state ground doctrine. For example, in Lee v. Cannon, which we cited in the briefs on page 375 of the Lee v. Cannon Supreme Court case, the Supreme Court says that the rule, this adequate and independent state ground doctrine applies with equal force whether the state law ground is substantive or procedural. So whether you see this as a procedural ruling or a substantive ruling, whatever it is, it's based on state law. And Mr. Wayne can easily show cause and prejudice to overcome that state law ruling. Any barrier that that state law ruling provides to, would have provided to state is very useful. Is that the standard or is it the EDPA standard that resulted in a decision that was contrary to and reasonable application of clearly established Supreme Court law? The problem with looking at that ruling under EDPA is there is no application of federal law in that ruling. It's purely, it's based, grounded purely on a rule of state law. If you look at Wayne too, which was- But it's grounded purely on an issue of, you're saying that any decision made by the state court that relies upon state law is fair grounds for review on federal habeas review? No, Your Honor, not at all. For example, if the state court at trial said, made a state court evidentiary ruling- Isn't that what happened in this case? There was a state court evidentiary ruling that the affidavit is an admissible hearsay? Yes, but let me finish. If a state court at trial said some evidence is not admissible under state law, there's no challenge to that in federal law, in federal court, because you'd have to be in custody in violation of the United States Constitution. But here, the constitutional issue that's before the court is a 16th Amendment ineffective assistance of counsel claim. The state law ruling goes purely to the issue of whether the state courts would have a hearing on that claim. Based on state law, assume you defer to it as much as you would ever defer to any state law, and then under adequate and independent state ground doctrine, we can show cause for certain Mr. Wayne is not at fault in any way. Let's assume for the moment that there was no doubt there was somebody who performed under the standard he should have performed. Then the next question becomes, under Strickland, was there prejudice? The court basically said, in light of the fact that the person who would testify is no longer alive, did not give anything by way of a notarized statement. It was merely a declaration, and in that context, there's no evidence that you can put in at this point in time that would show prejudice, and therefore, as a matter of law, are the merits you lose on this particular issue. I'm just saying, under the federal rules of evidence, we've argued that this is 307, but yet you argue that you've got that catch-all. Yeah, under the residual exception, which Pennsylvania doesn't recognize, that's an exception to the hearsay rule. Basically, what 807 says is, despite what the other technical rules say, for example, 803, 804, if there is great indicia of reliability, the court has some discretion to bring it in, and this court, as a matter of state law, said it isn't reliable. But the state court did not rule on 807, right? No, no, I understand that, but the state court basically said, in effect, they're not going to bring it in because there's no way you can bring it in, and in effect, it's not reliable. Now, I realize they didn't go under 807, and if you were a state court judge, you wouldn't refer to 807 under the federal rules. Right, but they said it doesn't fit into any of the hearsay exceptions that they recognize, which is not, doesn't include 807. So it's very much like, um, yes? Yes, Your Honor. You know, we're limited in time. Don't you think that we've had enough discussion on this point, and it's time for you to get into your other point? I'll be guided by the court, certainly, Your Honor. That's fine. On the second, so without any other questions. No, that's fine. On the second issue, it doesn't have this unusual problem, which I've actually never seen before in any of these cases, and there are a lot of errors in the first issue. The second issue is the procedural is very straightforward. The state courts, the superior court denied them on the basis of a state court procedural waiver rule, and that rule has added up. Well, you do have procedural default, but what did he say that puts the issue in play? What did Mr. Wayne argue on his behalf? It was argued that put this second issue into play. Oh, yes, Your Honor. And it's laid out in our briefs, but in the PCRA petition, he said, he quoted counsel Lippman's statement. He said that making this kind of broken promises vital is effective assistance. He cited two cases, which we've also cited in our briefs, that make exactly that legal point, and he connected the facts of this case to those cases. On appeal, he made exactly the same argument. The only difference between the lower court's opinion and the public's opinion is that the claim is now a separate claim for relief rather than being a subclaim below. The state court said we're barring this, but nobody ever has identified any other case in Pennsylvania which has barred a claim based on the idea that it was separated out from being a subclaim to being its own claim on appeal. There are a lot of cases, and all the cases that are cited have to do with claims that weren't raised at all in the lower court, The rule 2119A says that the argument shall be divided into as many parts as there are questions to be argued. Doesn't that control? We did that, Your Honor. In the Superior Court, the argument on the broken promises argument was that it's going to be separate. In fact, that confirms that we followed the rules, not that we broke the rules. So there's no adequate state ground here because there's no firmly established, regularly followed rule barring claims for this reason. In fact, like I said, no one has ever seen and identified any case other than this one barring a claim on this ground. Given that, there's no procedural bar because the state courts didn't address the claim on the merits. This court's running it as de novo, and it's a very serious issue. There should at least be an evidentiary hearing on this claim. The commonwealth has raised a number of issues about why did counsel decide not to present, excuse me, Mr. Lane, or maybe there's some tactic or something, but all that the court believes in that significant issue. Mr. Mitchell, if I understand that, do you want to discuss the Kindler case and how it applies to the argument you're making now? The Kindler, the Supreme Court case? The Supreme Court. The U.S. Supreme Court? 2-13-12-4. Discusses this. Discusses the out-of-district land offering law? Here's what it says. State courts have flexibility to apply waiver rules at their discretion. And that a state's frequent leniency does not demonstrate that the rule is not regularly followed. As we clarified on remand, only a new rule mandating dismissal, which constitutes a break from past discretionary practice, will be considered in that. Right. Yeah, that's another statement of one probably adequate state ground doctrine. Here, this is not a case where the state courts sometimes address them on the merits and sometimes don't under these circumstances. This is a case where there is no rule on point and there's no case in the history of Pennsylvania that upset this one and supplied a bar rule under these circumstances. So it's inadequate under any formulation of the rule. I've seen it a lot of times. Can you reserve time for rebuttals? Yes, three minutes. Thank you. Ms. Palmer? Just a little bit. Good morning, Your Honors. May it please the Court, Anne Palmer for the Commonwealth, Respondents, Appellees. Your Honors have hit upon this already, the essential points that we'd like to make. Essentially that there's no Supreme Court precedent committing, much less requiring, a hearing or a retrial as to the first claim. The problem that you have here is just on its surface only. The screenwriter couldn't do a much better job of having somebody give an inadequate performance when you have someone told at the outset that there are three witnesses and you don't interview any of the three witnesses. And it turns out that one of the witnesses later on said that she was willing to testify that Mr. Wayne was not the person that she mentioned to the police. Now, clearly there were two and maybe they wouldn't have prevailed in the end. And there certainly is a prejudice problem in light of the fact that Ms. Phelan died. But this one is just, it doesn't, you can't blame anything worse than this. Well, we are accepting the allegations in the affidavit only for argument's sake. I mean, whether or not counseling would obviously have been a subject of adversarial testing. And whether he or she is available, regrettably. But the problem remains, and in this case, as in many of these cases, the division between deficiency of performance and prejudice is not always so stark and easy to separate in separate buckets. So, I know counsel stated in the reply that we have not defended counsel's performance. But the analysis is completed in this sense because we do have the fundamental problem that this was a two-grooming shooting by all accounts. And that is consistent with the evidence otherwise at the scene. And you have the eyewitness in court, Nielsen? Yes. But you also have three other eyewitnesses, and one of whom purportedly is saying, or was saying, that Mr. Thomas slash Wayne was not the person. Well, her statement is also consistent with the prosecution's case. And there could be reasons why one may not present a defense witness who would potentially, quite possibly, bolster the commonwealth's evidence. Mr. Vidal was thus hanging at least one weapon, according to the evidence. And there's absolutely no basis to conclude, either on the paper or otherwise, that a woman with other people scrambling to get out of this hail of gunfire and literally stepping over the deceased body in the process that could encompass in her testimony the ballistics, medical examiner, and other testimony that would be necessary to establish which gun she claims that the shooter, the gunman, was not Mr. Wayne, but Mr. Vidal was there, too. And it's unclear who she saw, but it's something that cannot be established now. And it's highly questionable whether it could have been at the time then. And I think we can't do deficiency any more than we can prejudice, which is basically what he's asking us to do, is reverse all the presumptions applicable at this stage of the review, which appropriately favor the commonwealth. These pertain not only to the Strickland analysis, the presumption of effectiveness, but also the presumptive validity of the state criminal judgment. So, at every stage, he asks us to speculate on his behalf. And we can't forget the non-commonizability problem that your honors have pointed out. What we struggle with in responding to this is where's the constitutional harm, precisely? If this fear had lived, what would you have said at the second hearing? Because the first hearing wasn't held, and the Supreme Court, I think, remanded to have the hearing. It did. Well, she would have been subject to adversarial testing, and I guess he's sort of holding the commonwealth responsible for the tragic and unforeseeable decision of a 39-year-old woman to commit suicide. And that's not a constitutional violation. The denial of the hearing is clearly under 30 and under authority, not a constitutional violation. The admissibility of the woman is not a constitutional violation. So we're now struggling to find exactly what his constitutional claim is, just as your honors were questioning earlier. And even the relief he seeks is sort of, what is he asking for? He says he wants a hearing, but presumably it may be awarded or lit based on what could only be a piece of paper and the testimony of defense investigators or part of the defense team. It's not clear. But the result makes no sense that he requests. And the federal rules of evidence themselves are not constitutional authority, as he seems to be arguing that they provide a basis for relief. There is no Supreme Court precedent that permits or requires relief. And they're talking about this claim or the other. It's up to your honors what they're going to do. Let's go to the second issue. What was the Supreme Court's finding of waiver of an adequate and independent state law ground? Well, I mean, as Judge O'Connor mentioned, he did mention that his trial counsel failed to deliver on the promises he made in the opening statement to have many, many witnesses, including the defendant testifying, and never had anyone come on the stand. Well, the problem, obviously, from the default perspective, is that complaint was buried in a 70-some paragraph petition. And he claims that the preservation of the probably the most well-settled principle of pleading, especially by a counseled petitioner such as Mr. Wayne, and in fact, present counsel, is that you need to present your issues before the lower court. And if you only do so in the appellate court, then that issue will be waived. He is asking his court to sort of glide from the clear meaning of that rule, that you don't need to clearly present your issues, that you can bury them without subheading. I mean, he says it's a subclaim, but there was no subheading there. It was merely a complaint folded into his ineffective misclaim regarding Mr. Thurow. So it really isn't fair to sandbag any court, and all of the courts are busy these days. I guess the question becomes, would it have been sandbagged if it had considered this? In other words, he's saying that there was evidence that wasn't presented, in effect. And this is what happened. He promised evidence, and it was not presented. Well, that's turning to the merits. And turning to the merits, we do have to remember that the burden wouldn't have been on him. And if he had fairly presented it and denied it in the state courts, then we would be dealing with the claim under AEDPA and reviewing whatever decision was made. Unfortunately, we have no court decision on this claim, because he never presented it in a way that the state court of the first instance, the appropriate court to raise it before, wasn't adequately on notice that he chose, that that was the claim he was choosing to make at that time. And, you know, we cited some cases in this area, and they go to the fact that he does have the burden as to this claim as well, to prove deficiency as well as prejudice. And he would have to show that counsel's decision not to present, or actually, it's a fundamental decision of the defendant, whether or not to testify that we played no part in that in the sequence of events at trial. And again, prejudice, as your honors have pointed out. This was a very straightforward case. Yeah? Isn't that the issue that we had as we speak, the trial of what's his name, Petoskey, up in Belmont, Pennsylvania, where the counsel in his opening statement said that the defendant would testify, and yesterday he made the statement to the court that he rested the case without calling him. That happens more than once, doesn't it? Yes, and we will never know, I guess, until appeals are taken, if that's challenged. We don't know what the reasoning would be, but as your honor points out. It was a Sandusky case, right? Right, right. Yeah, so we don't know what happened, and unfortunately, again, counsel's deceased, and unfortunately, the passage of time does fall on the petitioner. He would, again, reverse all the presumptions and say that the Commonwealth was penalized by the passage of time. That's not how Edwin Strickland operated, nor fit it. Again, there's certainly no injustice here if he didn't present the claim in a way the state courts could adjudicate it. I forget the passage of time and when counsel regrettably died, but presumably if he had given the PCIA court, if he really felt that this was such a compelling claim and didn't know for some reason why it might not be, and had presented it squarely, then perhaps there could have been a hearing in on that. But that's part of the reason for the principles of exhaustion and default, is to force the presentation of claims in the state courts at the earliest possible opportunity, and he failed to do so. And I would just remind, you know, there's a list right for the Commonwealth case. This was a shooting where the Commonwealth witnesses had no motive to fabricate, and I would only put an honors to the closing argument by the prosecutor, which was very much above all to the credibility arguments that are being inappropriately advanced at this stage, in terms of how Carlton, if he had been choosing to frame Mr. Lane, he could have done so a lot more effectively and a lot earlier, and it could have been a lot less frank about the limits of what he saw. And, you know, I found that compelling re-reading in preparation for this argument, because we have heard repeatedly in the basement and the arguments associated with this case, excuse me, I'm sorry, that the Commonwealth's case was weak, and I would submit that that's very much not the case. And if your honors have any other questions, I would be glad to answer them. Okay. Judge Alderson, any further questions? No questions. Thank you very much. Thank you. I'm sorry. No, no problem at all. Mr. Woodcock. Yes. You've got an eyewitness here, Mr. Ellison, who had known the parties involved, including the victim and the defendant here, for well over ten years. He, in fact, had known them as far back as when they were children in Jamaica. And he gave a very strong in-court identification. That's tough to overcome. It would be tough to overcome, Your Honor, if it were capable of arguing misidentification. But the issue here is not that, oh, he thought it was Wayne, and it really wasn't. The issue is that Mr. Ellison, Carlton Thomas, a lot of these players in this case were involved in various drug-related dealings. They all, there was violence back and forth, drug-related violence. These guys had many reasons to point the finger at someone other than who actually did the shooting. So we never asserted that Mr. Ellison just made a mis-ID. I mean, it's similar if you look at the morning when Carlton Thomas, who testified about the events that supposedly happened in the morning about the kidnapping, right? I mean, jury clearly didn't believe him. And there's good reason for that, because these guys, there's a lot of stuff going on. They had reasons to point fingers at other people. That's the defense theory in the case, not that it was just a mistaken identification. And the second issue, the problem there is, we looked and found about five cases that deal with that, and they're all very fact-specific. And if an attorney says at the opening, for example, I'm going to give you many witnesses, including the defendant, that there are a lot of things that could come up as the trial goes on that may cause you to change not only your tactics but your entire strategy. And that's why this client really needs an evidentiary hearing, because the court needs to find out what was the thinking process. Unfortunately, the trial counsel is dead, but Mr. Lane can testify about that. You see, that's exactly why this client needs an evidentiary hearing, to untangle what the reasoning was. But how do we get around the procedural default in the decision of the state court that there was noncompliance with state procedural rules? Because that's not an adequate state ground, Ron. The commonwealth talked about this client supposedly being buried in the royal court, but it just wasn't. How is it not adequate? It's not adequate because there was no... The adequate state ground has to be firmly established and regularly followed. There was no firmly established rule or ever applied rule saying that a claim has to be put separately in the PCRA petition. All the rules say is that a claim has to be put in the PCRA petition, which this claim was. It was... I mean, you can see in our... In fact, in our reply brief, if you look at pages 23 to 24, this claim was played as clearly as any constitutional claim ever gets played, with case law, with connection to the facts. It was there. Basically, in the royal court, we said this lawyer was ineffective. Oh, I was running out of time. Go right back. Go straight back. We said this lawyer was ineffective. He didn't investigate. And in light of no investigation, he gets up in front of the jury and said, I'll present a bunch of witnesses, including my client. It's all connected. The deficient performance is all connected. You don't make promises like that to the jury if you haven't investigated the case and don't know what you can present. Thank you very much. Thank you to both counsel for well-presented arguments. We'll take the matter under advisement. Call the second case this afternoon.